DA 09-0198

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 420N

IN THE MATTER OF:

E.Z.V.,

      A Youth in Need of Care.

APPEAL FROM:    District Court of the Twentieth Judicial District,
In and For the County of Lake, Cause No. DN 07-07
Honorable C.B. McNeil, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Helena, Montana

      For Appellee:

          Hon. Steve Bullock, Montana Attorney General; Matthew T. Cochenour,
Assistant Attorney General; Helena, Montana

          Mitch Young, Lake County Attorney; Polson, Montana

                Submitted on Briefs:  October 21, 2009

                      Decided:  December 8, 2009

Filed:

         _____
                      Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2006, the following memorandum decision shall not be cited as precedent. It shall be filed as a public document with the Clerk of the Supreme Court and its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Father, K.L.N., appeals the Order of the Twentieth Judicial District Court, Lake County, terminating his parental rights to child, E.Z.V. We affirm.

¶3 This Court reviews a district court's custodial determinations with deference, affording it "all reasonable presumptions as to the correctness" of the custodial determination. *In re S.P.*, 241 Mont. 190, 194, 786 P.2d 642, 644 (1990). We will not disturb such decisions unless there is a mistake of law or a finding of fact not supported by substantial credible evidence that would amount to clear abuse of discretion. *In re S.P.*, 241 Mont. at 194, 786 P.2d at 644.

¶4 The question, restated on appeal, is whether the Department of Public Health and Human Services (Department) properly sought to terminate Father's parental rights under Montana law rather than the Indian Child Welfare Act, 25 U.S.C. §§ 1901-1923 (2000) (ICWA).

¶5 This case regards E.Z.V., a child born to K.L.N., the Father and Appellant, and M.A.V., the Mother. On May 25, 2007, the Department petitioned for temporary investigative authority and emergency protective services for E.Z.V. When the petition

2

was filed, the Department did not know of K.L.N.'s paternity. The District Court granted the Department's petition and appointed a guardian ad litem for the child.

¶6 Mother has Native American ancestry in the Confederated Salish and Kootenai Tribes of the Flathead Nation and possible, but unconfirmed, ties to the Oglala Sioux Tribe of the Pine Ridge Reservation in South Dakota. Six days after initiating the abuse and neglect proceedings, the Department sent a request to the Confederated Salish and Kootenai Tribes seeking verification of whether E.Z.V. was eligible for tribe membership.

¶7 In September 2007, the tribal court judge responded to the Department's inquiry, stating in a letter that the child did not meet the criteria for being defined as an "Indian Child or Indian Youth." The letter does state that E.Z.V. might be enrolled or enrollable with the Oglala Sioux Tribe in South Dakota. The Department's social worker in the case noted on the face of the inquiry that the Sioux Tribe in South Dakota did not reply to the Department's inquiry letter regarding the child's membership in that Tribe. In September 2008, after reunification efforts and Mother's repeated failure to comply with treatment plans, the Department moved to terminate her parental rights, which she relinquished voluntarily.

¶8 In early 2008, genetic testing determined that K.L.N. is E.Z.V.'s father. K.L.N. indicated that he thought he was associated with the Confederated Salish and Kootenai Tribes. The Department sent a letter to the tribes requesting verification. The Department received a phone call from the Tribes' ICWA specialist again indicating that E.Z.V. was not enrollable with the Confederated Salish and Kootenai Tribes.

¶9 In September 2008, the Department petitioned to terminate Father's parental rights to the child. The Department informed the District Court that reunification efforts and treatment plan were not required under the statute because Father was in prison for sexually assaulting a minor. In 2007, Father pleaded guilty to sexually assaulting his 9-year-old niece. He was sentenced to ten years in the Department of Corrections, with five years suspended.

¶10 The District Court terminated Father's parental rights to E.Z.V. under Montana law, determining that the Department was not required to implement a treatment plan due to the Father's conviction for sexually abusing a child. The District Court approved the Department's permanency plan, in which E.Z.V. was placed with his kinship foster parents on the Confederated Salish and Kootenai Reservation. K.L.N. now appeals from the termination of his parental rights to E.Z.V.

¶11 Father argues that the Department and Lake County failed to follow the procedure dictated by ICWA for giving notice to the two tribes allegedly involved. Under 25 U.S.C. § 1912(a), "[a]ny involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian and the Indian child's tribe . . . ." Father argues that the proceedings should have been conducted under ICWA, and the Department and Lake County failed to conform to the statute's notice requirements. Because Father did not raise this issue below, he asks this court to invoke plain error review because "the failure to follow ICWA is clear, and ICWA in its terms involves a fundamental right."

4

¶12 The threshold question is whether the District Court knew or had reason to know that an Indian child was involved, thus bringing the termination proceedings under ICWA. The statute defines an "Indian child" as: any unmarried person who is under age eighteen and is either "(a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe." 25 U.S.C. § 1903(4).

¶13 There is no evidence that E.Z.V. is an Indian child under the statute. The Department first investigated whether E.Z.V. was within the statutory definition of "Indian child" through his mother. The Department sent a "Request for Verification of Status" to the Confederated Salish and Kootenai Tribes to determine whether the child was eligible for membership or enrollment. The tribe responded, stating in the letter that E.Z.V. did not meet the criteria for being defined as an Indian child under the tribal laws.

¶14 The letter does state that E.Z.V. might be enrolled or enrollable with the Oglala Sioux Tribe in South Dakota. The Department's social worker in the case noted on the face of the inquiry that the Sioux Tribe in South Dakota did not reply to the Department's inquiry regarding the child's membership in that Tribe. Notably, the only potential connection on record to the Sioux Tribe is through Mother, who relinquished her parental rights voluntarily. Therefore, the fact that the Department received no response has no bearing on Father's current appeal.

¶15 After learning of K.L.N.'s paternity, the Department inquired of the Confederated Salish and Kootenai Tribes whether the child was eligible for tribal membership through K.L.N. The face of the original inquiry reads: "Phone call from Bev Swaney [ICWA

5

Specialist for the Confederated Salish and Kootenai Tribes] in July; 2nd gen. and non-enrollable."

¶16 Therefore, the District Court properly terminated K.L.N.'s parental rights under Montana law because the court did not "know" or have "reason to know" that an Indian child was involved. Notably, while there is no evidence that E.Z.V. is an "Indian child" within the meaning of ICWA, the Department acted consistent with the spirit of the Act by placing the child with extended family members on the Confederated Salish and Kootenai Reservation.

¶17 We have determined to decide this case pursuant to Section I, Paragraph 3(d) of our 1996 Internal Operating Rules, as amended in 2006, which provides for memorandum opinions.

¶18 Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ PATRICIA O. COTTER
/S/ BRIAN MORRIS